04-4879

**IN THE**
**UNITED STATES COURT DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
_____

**UNITED STATES OF AMERICA**

**v.**

**ANGELA KHOROZIAN,**

**Appellant**

**Appeal from the Final Judgment in a Criminal Case of the United States District Court for the District of New Jersey (Crim. No. 00-393).  Sat Below: Honorable William H. Walls, U.S.D.J.**

_____

**ANSWER IN RESPONSE AND OPPOSITION**
**TO THE MOTION OF DEFENDANT-PETITIONER**
**UNDER 28 U.S.C. § 2255**

_____

**CHRISTOPHER J. CHRISTIE**
**United States Attorney**
**970 Broad Street**
**Newark, New Jersey  07102-2535**
**(973) 645-2700**

**On the Brief:**

**MICHELE BROWN**
**Assistant U.S. Attorney**
**(973) 645-2700**

## TABLE OF CONTENTS

Table Of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement Of The Case And Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

        A.      The Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument

I.       Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.      Khorozian's Trial Counsel Was Not Ineffective
       In Counseling Her Against Testifying at Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.     Khorozian's Trial Counsel Was Not Ineffective
       In Conducting an Investigation and Presenting Witnesses . . . . . . . . . . . . . . . . . . . . . 15

IV.     Khorozian's <u>Brady</u> Violation Allegations Are Utterly Baseless . . . . . . . . . . . . . . . . . . . 18

V.      Petitioner's Blakely and Actual Innocence Claims Fail  . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.    Khorozian's Section 2255 Motion Should Be Dismissed
       On the Papers, Without a Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

.

# TABLE OF AUTHORITIES

**Cases**                                                **Page**

Coleman v. Thompson,
    501 U.S. 722 (1991) ...................................................................................... 10,19

Davis v. United States,
    417 U.S. 333 (1974) ........................................................................................ 10

Government of the Virgin Islands v. Forte,
    865 F.2d 59 (3d Cir. 1989) ............................................................................. 20

Hill v. United States,
    368 U.S. 424 (1962) ...................................................................................... 10,19

Khorozian v. United States,
    124 S. Ct. 450 (2003) ..................................................................................... 8

Lewis v. Mazurkiewicz,
    915 F.2d 106 (3d Cir. 1990) ........................................................................... 11

Strickland v. Washington,
    466 U.S. 668 (1984) .......................................................................... 11, 12, 13, 17

United States v. Addonizio,
    442 U.S. 178 (1979) ..................................................................................... 10, 19

United States v. DeLuca,
    889 F.2d 503 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990) ......................................... 10

United States v. Essig,
    10 F.3d 968 (3d Cir. 1993) .......................................................................... 10, 19

United States v. ex rel. Johnson,
    531 F.2d 169 (3d Cir.), cert. denied,  425 U.S. 997 (1976) ................................................. 10

United States v. Frady,
    456 U.S. 152 (1982) ................................................................................... 10, 19, 20

United States v. Gray,
    878 F.2d 702 (3d Cir. 1989) ........................................................................... 11

United States v. Khorozian,
    333 F.3d 498 (3d Cir. 2003) ............................................................................ 8

United States v. Leggett,
    162 F.3d 237 (3d Cir. 1998) ........................................................................... 15

<u>United States v. Mayer,</u>
   235 U.S. 55 (1914) ................................................................................................ 10


**<u>Statutes</u>**


18 U.S.C. § 371 ....................................................................................................... 6

18 U.S.C. § 1344 ..................................................................................................... 6

28 U.S.C. § 2255 .............................................................................................. passim

**<u>Guideline</u>**

U.S.S.G. § 2F1.1(a) ................................................................................................ 8


**<u>Rule</u>**

Rule 4(b)     ....................................................................................................... 20

## PRELIMINARY STATEMENT

The United States of America, through its attorney, Christopher J. Christie, United States Attorney for the District of New Jersey (by Michele Brown, Assistant United States Attorney), submits this Answer in response and opposition to the motion of Defendant-Petitioner Angela Khorozian (the "petitioner") to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. The government denies the allegations in the motion and opposes the application on the grounds that Angela Khorozian has not shown her counsel was ineffective, nor has she shown cause or actual prejudice for her other claims, which are prerequisites for relief under § 2255. Her actual innocence and <u>Blakely</u> claims are entirely baseless, and repetitive of prior dismissed claims. Her entire motion is little more than a belated effort to relitigate her guilt and create sentencing issues, which should have been raised on direct appeal, and to fashion such make-weight arguments into a basis for vacation under § 2255. For the reasons that follow, petitioner's motion should be denied without a hearing.

## STATEMENT OF THE CASE AND FACTS

### A. The Offense Conduct

Beginning in early April, 2000, petitioner Angela Khorozian and devised a scheme with her co-conspirator Eduardo Queirolo to negotiate counterfeit checks worth more than $20 million through Hudson United Bank ("HUB") in order to obtain a "commission" of $6 million dollars from the proceeds of those checks, and then wire transfer the remaining $14 million to others overseas.

Defendant, a resident of Alpine, New Jersey, and Queirolo, a Brazilian resident, had been involved with one another in various business dealings since in or about 1992. (This factual

1

recitation is excerpted from the Presentence Report found in Petitioner's Appendix.)  In or about early 2000, petitioner was seeking investors for a new deal and thus telephoned Queirolo at his residence in Brazil, where he operated a sugar plantation.  As a result, Queirolo turned to a banker-friend of his, Mr. Camilo, who did not have any investors for the legitimate deal proposed by Khorozian.   Camilo, however, had connections to some individuals who had money that had been paid to them "under the table," and who wanted to get that money out of Brazil without paying taxes on it.

<u>The Conspiracy is Formed and the Scheme to Defraud is Devised</u>

Camilo told Queirolo that he had this under-the-table money, and that it was in the form of two checks that were worth over $20 million.  Camilo also said that the individuals who owned these checks were willing to pay $6 million to the person(s) who were willing to cash the checks through a United States bank and then wire the remaining funds to a Swiss bank account.  Queirolo proposed to enter this deal with petitioner, and petitioner agreed to participate in it after discussing the details of the plan.

According to Queirolo's testimony at trial, the plan that petitioner and Queirolo devised was for Queirolo to bring the two checks totaling over $20 million from Brazil to the United States, and to give them to petitioner.  In turn, petitioner would deposit the checks into a corporate bank account because petitioner knew that no bank would permit her to funnel over $20 million worth of checks through a personal bank account without asking questions.  Petitioner would then retain $6 million, which she and Queirolo intended to share equally, and then wire the remaining funds, over $14 million, into a Swiss bank account.

To avert suspicion and ensure success, petitioner and Queirolo needed to use a corporate back account through which they could negotiate the checks.  Since neither petitioner nor Queirolo maintained a corporate bank account in the United States, they needed to open such an account.  Petitioner came up with the idea of using a corporation that she had formed in 1993, Sugarbank Corp. ("Sugarbank"), to effectuate the plan.

The Material Misrepresentations and the Scheme to Defraud

Petitioner had several obstacles to overcome.  First, in March 1996 Sugarbank's license to do business in the State of New Jersey had been revoked due to failure to file annual reports. Further, Sugarbank had never maintained a bank account and lacked an employer identification number ("EIN").  To overcome these obstacles, petitioner used John Demetrius ("Demetrius"), who had been petitioner's financial advisor for a long time.  Demetrius sat on the advisory board of the HUB, and paved the way for petitioner to open a commercial bank account for Sugarbank at HUB by introducing petitioner to members of the commercial finance division at the North Haledon branch of HUB.  Demetrius also assisted petitioner in obtaining an EIN for Sugarbank so that petitioner could open a bank account in its name.

In May 2000, petitioner opened the Sugarbank bank account at HUB.  Petitioner was listed as the sole signatory on the Sugarbank account.  She represented that she was the company's Chairman, and she provided HUB with documents that it demanded; these documents authorized the opening of the account.  Among the documents that petitioner provided HUB was a filed certificate of incorporation for Sugarbank and a corporate resolution stating that petitioner was authorized to open the account.  At no time did petitioner disclose to HUB that Sugarbank's license to do business was revoked.  Petitioner told HUB that the money that would fund the

3

account was going to be used for a legitimate sugar plantation deal in Africa.  Moreover, to give HUB an added false sense of security, petitioner misled HUB by representing that the deposits would be made by a wire transfer.  All along, however, petitioner and Queirolo knew that they intended to make the deposits by check, and never planned for any money to be wired into the account.

On May 25, 2000, Queirolo received the checks, and learned for the first time that they were issued by U.S. Companies and were drawn on U.S. banks.  One check was drawn on the account of Liberty Carton Company, and the other check was drawn on the account of Costco Wholesale Corp.  Both of these checks (hereinafter, collectively, the "Checks") were made payable to "Luiz Carlos Teixeira."

Upon receipt of the Checks, Queirolo attempted to verify that they were not derived from illegal dealings such as drugs or arms trafficking.  Queirolo had limited ability to verify the authenticity of the Checks given that they were supposed to be proceeds of transactions for which no taxes had been paid in Brazil, thus making them "illegal" currency in Brazil. Queirolo learned, however, that the accounts on which the Checks were drawn had sufficient funds to cover the Checks.  Still knowing little about the Checks, Queirolo faxed copies of them to petitioner so that she could investigate them.  Because they were issued by U.S. companies and drawn on U.S. bank accounts, Queirolo believed that petitioner could more easily make inquiries into the Checks.  Petitioner later claimed she had in fact conducted an investigation into the Checks.

On May 29, 2000, Queirolo flew from Brazil to New York with the two Checks totaling $20,398,872.75.  Queirolo gave petitioner the Checks, which she endorsed with a typewriter to make payable to Sugarbank.

Later on May 30, 2002, petitioner and Queirolo went together to the North Haledon branch of HUB, where petitioner introduced Queirolo to the branch manager as "Mr. Luiz Carlos Teixeira."  Petitioner then deposited the two Checks into the Sugarbank account.  While doing so, and to give HUB comfort in knowing the money related to a legitimate deal, petitioner lied to HUB, stating that the money would be used to fund a second sugar plantation in Africa, claiming that she already had one in Brazil.  The HUB representative told petitioner that it would take a minimum of 5 days before the funds were available in the account.

When petitioner and Queirolo returned to petitioner's home, petitioner received a facsimile that instructed her and Queirolo on how to disburse the over $14 million. The facsimile, handwritten in a sloppy manner, directed them to disburse the funds to five accounts. Petitioner and Queirolo were told to send most of the funds to a Swiss bank account, as they had expected, but a portion was to be sent to various accounts at banks in several different countries, and that were listed to individuals with Arabic names.  Queirolo found these directions (and the sloppy written document) suspicious, as they were not consistent with what he had expected prior to departing Brazil.

Queirolo and petitioner then discussed the situation.  They decided not to mention any of their concerns to HUB.  Rather, petitioner decided to draft a fake investment contract between "Luiz Carlos Teixeira," the payee on the two Checks who was unknown to them both, and Sugarbank.  This fake document represented that Sugarbank was administering a hotel

5

development project in Africa, and that this hotel deal was worth the exact total amount of the checks.  Sugarbank allegedly was going to be paid fifteen percent in connection with this project. The fake investment contract drafted by petitioner was 2 pages long, and was sent to Brazil for translation into Portuguese so that it would appear authentic, and for signature by someone identified as "Teixeira."  Further, it was dated May 8, 2000 so that it correlated to the date of the deposit of the Checks.  Petitioner and Queirolo planned to provide it to HUB in the event that HUB or anyone else inquired further into the funds or the transactions to which they related.

Then, on June 5, 2000, Queirolo was scheduled to return to Brazil.  Petitioner and he discussed the funds in the Sugarbank account, and petitioner agreed not to withdraw any of these funds prior to Queirolo's return to the United States.  Despite this promise, petitioner went to HUB on June 5, and sought to withdraw $20,000 in cash and $100,000 in a certified check made payable to Sugarbank.

Meanwhile, HUB had become concerned when it received the Checks to fund the Sugarbank account, rather than a wire transfer as expected.  Thus, HUB made inquiries into the validity of these checks, learned that they were counterfeit, and then contacted the Federal Bureau of Investigations (the "FBI").  Then, when petitioner attempted to withdraw the $120,000 on June 5, FBI agents arrested her.  Later on June 5, FBI agents arrested Queirolo as he was preparing to depart the country for Brazil.

**B.  Procedural History**

On June 6, 2000, Khorozian was charged in a federal criminal Complaint.  On June 16, 2000, she was indicted for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, and

6

bank fraud, in violation of 18 U.S.C. § 1344.  On October 11, 2000, the grand jury returned a Superseding Indictment, which also charged Khorozian with conspiracy and bank fraud.

Represented by Ivan S. Fisher, Esq., petitioner was tried on the two-count Superseding Indictment before the Honorable William H. Walls and a jury.  During the government's case, trial counsel pursued a two-pronged defense to the allegations:  that Khorozian did not know the checks were counterfeit, and that she had legitimate business transactions in African that could account for her possession so the checks.

Defendant also chose to present evidence to the jury.  Defendant called a number of witnesses to suggest, among other things, that she had been engaged in a legitimate deal to develop a hotel in Africa.  Among the defense witnesses was Etembe Kono ("Kono"), who came from Cameroon.  Kono testified as to her awareness of a hotel development deal that defendant had been working on with an individual named "Teixeira," and further claimed to have received a Portuguese investment contract, translated into Portuguese, relating to such deal on May 15, 2000.  An English version of the document was in evidence.

Following Kono's testimony, defendant, who had made numerous requests for adjournments during the trial – all of which had been granted – sought another adjournment of several days, to await the arrival of another foreign witness, whose wife had just died, from the nation of Chad.  In seeking this adjournment, defense counsel represented that the witness's testimony would be extremely limited, and somewhat duplicative of Ms. Kono's.  The District Court denied the motion, observing that it had accommodated several defense requests for adjournments during the course of the trial, finding that it was highly unlikely that an individual whose wife had apparently just died would travel so quickly across the world to testify at

defendant's trial, and further finding that the limited proffer by the defendant as to the witness's testimony suggested that it would be cumulative of other defense testimony.

At the close of the case, and following approximately 2 days of deliberations, the jury returned a verdict of guilty on both counts.

The Probation Office then prepared a pre-sentence investigation report.  In it, the Probation Office recommended that defendant's base offense level of 6, pursuant to U.S.S.G. § 2F1.1(a), should be increased by 16 levels pursuant to U.S.S.G. § 2F1.1(b)(1)(Q), based on the Specific Offense Characteristic that the total intended loss was $20,398,872.75 million.

Prior to sentencing, defendant filed a memorandum with the District Court objecting to the increase of the base offense level arising from the amount of loss, and moving for various downward departures.  At the sentencing hearing held on June 26, 2002, defendant made an additional downward departure based on alleged overstatement of the seriousness of defendant's conduct.  At sentencing, District Court found that the over $20 million figure represented the amount of intended loss.  Thus, defendant faced a total offense level of 24, a criminal history category of  I, and a Guidelines range of 51 to 63 months.  The District Court then denied all downward departure motions except for the motion to depart downward based on an overstatement of the seriousness of defendant's conduct, which it granted and awarded.  The District Court sentenced defendant to eighteen months' imprisonment.

The Third Circuit affirmed her conviction and sentence in a precedential opinion, United States v. Khorozian, 333 F.3d 498, 503 (3d Cir. 2003), and denied rehearing *en banc*.  The Supreme Court denied her petition for certiorari.  Khorozian v. United States, 124 S. Ct. 450

(2003).  On or about October 5, 2004, Khorozian filed the present motion to have her sentence

vacated, set aside or corrected pursuant to 28 U.S.C. § 2255.

## ARGUMENT

In support of her Section 2255 motion, Khorozian contends that her trial counsel, Ivan S. Fisher, Esq., was ineffective before, during, and after trial.  Each of these claims is without merit. Contrary to Khorozian's claims, defense counsel did not fail to prepare for and conduct trial competently, nor did he coerce her into waiving her right to testify at trial. That counsel's sage and then-acceptable advice to his client that she not testify in her defense is now recast as ineffective assistance is not sufficient to state a claim for which relief can be granted -- and is in fact belied by Ms. Khorozian's own certification and course of conduct throughout this case.

Khorozian next purported constitutional violations are utterly without factual foundation and equally without merit.  Petitioner's conviction was not obtained by perjured testimony, nor did the government use any perjured testimony at trial, notwithstanding petitioner's completely fabricated and groundless allegations to the contrary.  Petitioner's other various and sundry arguments, including a completely unsupported Brady violation claim raised here for the first time, cannot survive here.

Finally, Khorozian renews her actual innocence claim, and yet raises no arguments or factual support for the allegation that has not been considered and rejected at trial and on direct appeal.  This claim too must fail.  Because the face of petitioner Khorozian's motion and the record of the case conclusively show that she is not entitled to relief, her motion should be dismissed without a hearing.

## I.    Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may seek relief on the following grounds: that her sentence violates the Constitution or the laws of the United States, that the court lacked

jurisdiction to impose sentence, that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  See Davis v. United States, 417 U.S. 333, 343 (1974).  The grounds for collateral attacks on final judgments are narrowly limited. United States v. Addonizio, 442 U.S. 178, 184 (1979) ("an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment") (footnote omitted).  An error of law is subject to collateral attack only if it "constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Id. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); see also United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990).  Similarly, errors of fact are subject to collateral attack only "'in those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'"  United States v. Addonizio, 442 U.S. at 186, quoting United States v. Mayer, 235 U.S. 55, 69 (1914).

Claims that were not made at the time of trial or on direct appeal may be waived.  United States v. Frady, 456 U.S. 152, 164 (1982).  To obtain collateral relief based on a trial error to which no contemporaneous objection was made, a convicted defendant must show both "cause" for failing to raise the argument initially and actual prejudice resulting from the challenged error. Id. at 167-68.  In order to demonstrate legitimate "cause," a defendant must show that "some objective factor external to the defense," such as ineffective assistance of counsel, impeded his ability to bring the claim.  United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993); see also Coleman v. Thompson, 501 U.S. 722, 752-54 (1991).

The burden of proof is on a Section 2255 petitioner to support a claim of ineffective assistance of counsel.  United States v. ex rel. Johnson, 531 F.2d 169, 174 (3d Cir.), cert. denied,

425 U.S. 997 (1976).  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court

adopted a two-prong test for determining whether counsel's performance was so deficient as to

require a reversal of the defendant's conviction:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u> at 687.  <u>See</u> <u>also</u> <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 110 (3d Cir. 1990); <u>United States v.</u>

<u>Gray</u>, 878 F.2d 702, 710 (3d Cir. 1989).

The deficiency showing mandated by <u>Strickland</u> is a rigorous one.  To be "deficient",

counsel's performance must be "outside the wide range of professionally competent assistance."

466 U.S. at 690.  In assessing counsel's performance, resort to hindsight is to be avoided.  <u>Id.</u> at

689.  Instead, the Court "should recognize that counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment."  <u>Id.</u> at 690.  A defendant making a claim of ineffective assistance of counsel must

"identify the acts or omissions of counsel that are alleged not to have been the result of

professional judgment."  <u>Id.</u>  In addition, the defendant must show that there is a reasonable

probability that but for counsel's unprofessional errors, the result of the proceeding would have

been different.  <u>Id.</u> at 694.

Although Khorozian makes a claim of ineffective assistance, she has utterly failed to

show either deficient performance by counsel or any resulting prejudice necessary to the

successful assertion of such a claim.

**II.     Khorozian's Trial Counsel Was Not Ineffective**
         <u>**In Counseling Her Against Testifying at Trial.**</u>

Khorozian contends that her trial counsel rendered ineffective assistance by failing to

"permit" her to testify at trial.  She claims that she sought to exercise her constitutional right to

testify, but was effectively barred from doing so because her lawyer threatened to abandon the

case if she asserted that right.  See Petitioner's Memorandum of Law at 17-27.  She also claims

that her efforts to find a new lawyer in the middle of the trial were unsuccessful, and that,

"terrified of being left without counsel," she felt compelled to forfeit her right to testify.  As

might be expected, she further posits that had she testified, she would have exonerated herself by

refuting her co-conspirator Queirolo's testimony.  <u>Id.</u>

These conclusory allegations are contradicted both by the petitioner's own affidavit

submitted in support of the motion as well as the petitioner's course of conduct throughout the

case.  Even without such factual contradiction, Khorozian's claim would fail.  The record

indicates that Khorozian made a knowing and calculated decision to exercise her right not to

testify in her own defense, in reliance on sound strategy and sage advice of her counsel.  When it

suited her, Ms. Khorozian candidly admitted her own counsel's competence.  In a letter to Mr.

Fisher dated May 21, 2001, which is submitted by petitioner in her appendix, she stated:   "You

have been doing this work for over 35 years and I do not doubt you (sic) expertise, but rather my

luck in this matter."

Many good reasons existed for counsel's sound advice, some of which can be gleaned

from the Presentence Report.  Ms. Khorozian is no stranger to litigation, and has give sworn and

contradictory testimony in a number of proceedings, concerning things both mundane and

substantive.  In addition, she made statements to law enforcement and court personnel pre-trial,

13

which are also inconsistent.  For example, Ms. Khorozian has used four different dates of birth, two Social Security numbers, three aliases, various different countries of nationality.  She reported attending the University of Milan at the same time she attended Rutgers.  Rutgers has no record of the defendant.  Italian records could not be verified.  She admitted not filing federal and state tax returns for the last decade.  These are but a few of what could have been fruitful areas of cross-examination had the petitioner testified at trial.  Far from being incompetent, Mr. Fisher exhibited the highest caliber of prudence and good judgment in counseling his client against exposing herself to potentially detrimental cross-examination.

Petitioner is also incorrect in her allegation that the government made a plea offer to her that would have resulted in no jail time.  That is simply untrue.  No such plea offer was made to Khorozian at any time before, during, or after trial.

Even if Mr. Fisher's conduct were to be considered unprofessional, and meet the first prong of the <u>Strickland</u> test, relief would still be unavailing to the petitioner, as no prejudice from the conduct has been alleged, or can be established.  To gain relief for ineffective assistance, a defendant must show unprofessional conduct and resulting prejudice; that is, that there is a reasonable probability that, but for counsel's errors, the result would have been different.  <u>Strickland</u>, 466 U.S. at 694.  No objective evidence of such prejudice has been established here.  No reasonable probability that the outcome would have been different can be established here.

With self-serving allegations, Khorozian claims that she would have been exonerated had she testified at trial.  But that is foolish vainglory on her part.  Had she testified at trial and been convicted, as surely she would have been given that the jury rejected the very defense she

14

would have presented, we would undoubtedly be presented now with a claim that her counsel was ineffective by permitting her to take the stand in her own defense.  Especially in light of the factual background of this case –  all the cross-examination material available to the prosecution, and counsel's success in puting forth Khorozian's defense (that she did not know the checks were counterfeit, and that she had a genuine business deal in Africa) through his cross-examination of government witnesses and through the witnesses who did testify on Ms. Khorozian's behalf, it may well have been ineffective assistance to <u>permit</u> the petitioner to testify.

Ms. Khorozian's ready supply of ever-changing lawyers also refutes her convenient allegation that she was "terrified" to be left without counsel, and therefore she waived her right to testify.  First, the Court would surely have permitted her to retain counsel fo her own choosing to represent her at trial.  The Court was more than generous with defense counsel's repeated requests for adjournments in this case.  In fact, between the time of indictment and the time of trial, more than one and one half years lapsed, most of which was caused by defense counsel's requests for various adjournments.  Second, by my count, Ms. Khorozian has been represented by more than <u>six</u> different sets of attorneys in this matter – beginning with Mr. Katz, then Mr. Cristini, Mr. Fisher, Mr. Fahringer, Mr. Cecchi, now Mr. Bilinkas, and with letters, supplications, and admonitions from various other counsel, including Dickstein Shapiro in Washington, D.C.  Her own words confirm she has no reluctance to change horses midstream: in a letter to Mr. Fisher dated January 2001 (part of petitioner's Appendix) a full year before trial began, she stated: "I have interviewed many attorneys for my defense."  She apparently continued to do so throughout the course of the litigation.

15

The right to testify on one's own behalf at a criminal trial is a constitutional right, which can only be waived by a defendant.  United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998). By the facts on record, it appears that the petitioner made the decision to follow the advice of her counsel and not testify.  Having made her own choice not to testify, she cannot now avoid its consequences by alleging that his lawyer should have talked her into it.  To hold otherwise would mean that defendants could take their chances at trial and then, if convicted, have their convictions overturned on the grounds that their attorneys should have compelled them to testify. Khorozian's continued dissatisfaction with the outcome of her trial and the resulting sentence does not state a claim of ineffective assistance, and it provides no basis for overturning her conviction.  Finally, and though we submit it is unnecessary given the lack of merit of her claim, should the Court have any unresolved questions as to the particulars of this matter, the government stands ready to contact Mr. Fisher and make him available for testimony before the Court.

III.   **Khorozian's Trial Counsel Was Not Ineffective In Conducting an Investigation and Presenting Witnesses.**

The next two points in petitioner's brief allege that trial counsel was ineffective because: a) he failed to undertake a reasonable investigation; and b) he had a conflict of interest, having previously represented a "potential" defense witness.  These claims are meritless, and are once

16

again belied by the very documents submitted by petitioner in the appendix in support of her motion.

During the defense case at trial, trial counsel presented five witnesses to buttress the two-pronged defense theory that Ms. Khorozian did not know the checks were counterfeit and that she had legitimate business transactions in Africa, which could have accounted for her possession of the checks.  Mr. Fisher offered testimony of her physician Robert Adair, who testified that he was present at her home for a dinner honoring African dignitaries.  Mr. Fisher also offered the testimony of Madam Kono, friend and business associate of the petitioner's from Cameroon, who testified as to business transactions contemplated, negotiated, and in progress in Chad.  Though petitioner complains and submitted certifications of various other African governmental officials who attested that they were prepared to testify in Ms. Khorozian's defense, at best this testimony would have been cumulative of Ms. Kono's.  Additionally, testimony of at least one witness was not available, through no fault of counsel's, because of the death of the wife of Magistrate Gouja Nassar of Chad.

Petitioner also submits a number of other certifications of persons who now claim they were prepared to testify on her behalf in support of her allegation that her counsel failed to conduct an adequate investigation.  Yet by one such person, Steven Houston's, own admission, he was interviewed by trial counsel at length.  That he was not called to testify may well be a product of counsel's quite rational decision that his testimony would not further Ms. Khorozian's cause.

Bordering on the absurd is Ms. Khorozian's claim that her counsel was ineffective because he had a conflict of interest, having at one time represented Madeline Wasserman, a

17

potential defense witness in the case.  Ms. Khorozian's own certification and correspondence submitted in her Appendix reveals that Ms. Khorozian was introduced to her trial counsel by her friend Ms. Wasserman.  Surely, the relationship between Ms. Wasserman and Mr. Fisher was discussed by these friends at the time that Ms. Wasserman was recommending, and Ms. Khorozian was considering, hiring Mr. Fisher.  In addition, petitioner declares (again, without factual support of any kind) that Ms. Wasserman has a criminal record.  If so, that status alone may have been sufficient to keep her off the stand.

Counsel is required to make a reasonable investigation of the law and facts in his client's case, and not to exhaust all possibilities.  In turn, the court must judge the reasonableness of counsel's challenged conduct on the facts of the case, viewed as of the time of counsel's conduct.  Strickland, 466 U.S. at 690.  Here, Mr. Fisher conducted a thorough investigation.  He presented a cogent, vigorous defense on Ms. Khorozian's behalf, and made tactical decisions consistent with the defense theory.  At no time did counsel's performance fall below an objective standard of reasonableness.  Trial counsel cannot be deemed ineffective in not presenting every possible witness at trial, especially when any number of them would not assist in the defense.  Counsel cannot be deemed ineffective by declining to put a witness on the stand with a criminal record.

Even if cause were to be presumed, no prejudice has been claimed, other than bare bones allegations that her conviction would not have occurred.  Again, the witnesses called by the defense clearly put forth the defense theory, and the additional witnesses' testimony would have been cumulative, duplicative, or perhaps harmful to Khorozian's case.  Because Khorozian is utterly unable to show that she was prejudiced in any way by counsel's preparation and case

18

presentation, her ineffective assistance claim on this ground must also fail.   In the absence of specific factual allegations, there is no basis on which to hold a hearing, let alone disturb Khorozian's conviction and sentence.

**IV.      Khorozian's <u>Brady</u> Violation Allegations**
           **<u>Are Utterly Baseless</u>**

Astounding is petitioner's charge, twisted nominally into a constitutional argument, that the government had in its possession <u>Brady</u> information relating to Mr. Queirolo, co-conspirator of the petitioner in this case, which was not disclosed to the petitioner.  Petitioner also claims that Mr. Queirolo had a criminal record, had outstanding criminal charges in Brazil, and was wanted in his home country for bank fraud and tax evasion.  She further contends that these completely fabricated and unsupported "facts" were known to the government, hidden from the petitioner by the government, and knowingly offered into evidence at trial.  The government absolutely denies these claims.

In support of these outrageous allegations, petitioner offers the incompetent certification of one Dennis McCarthy, a Brazilian investigator, which is rife with speculation, hearsay, innuendo, and falsehoods.  Most telling is the conclusion that Mr. Queirolo had a criminal record from purported 1997 Brazilian court records called "carta precatoria," which even Mr. McCarthy states are "official Letters, which the judge of one district court addresses to a judge of another, instructing the Letter to comply with certain judicial diligences."  From a listing of six such Letters, which do not identify the substance of the letter, and which could be related to any number of topics, from a debt, to a tax lien, to a thousand other possibilities unknown to us, petitioner concludes that Mr. Queirolo had a criminal history and was wanted by the authorities.

19

Such statements are completely irresponsible and highlight petitioner's continued failure to come to terms with the truth in this case.

Even if they were true, these claims would not obtain relief in a Section 2255 motion. They were not presented at trial, on direct appeal, or on appeal to the Supreme Court. Claims that were not made at the time of trial or on direct appeal may be waived. United States v. Frady, 456 U.S. 152, 164 (1982). To obtain collateral relief based on a trial error to which no contemporaneous objection was made, a convicted defendant must show both "cause" for failing to raise the argument initially and actual prejudice resulting from the challenged error. Id. at 167-68. In order to demonstrate legitimate "cause," a defendant must show that "some objective factor external to the defense," impeded his ability to bring the claim. United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993); see also Coleman v. Thompson, 501 U.S. 722, 752-54 (1991). No such cause exists here. These claims could have been presented at trial. They were not, and no excuse is given for failing to raise the argument. Moreover, these complete fabrications and mischaracterizations cannot provide relief, no matter when raised.

**V.    Petitioner's Blakely and Actual Innocence Claims Fail**

Finally, Khorozian resurrects the now often considered and rejected actual innocence claim, and renews her Blakely claim, though it, too, was recently rejected by this Court. Petitioner raises no new arguments, no new facts, no new law, in support of her claim. She merely repeats it, in the hope that some relief will be granted. The standard applied in this Section 2255 motion, of course, is even higher than on any direct appeal, requiring an error of law that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. at 185 (quoting Hill v. United States, 368 U.S.

20

424, 428 (1962)).  *See also* <u>United States v. Frady</u>, 456 U.S. at 166 (plain error standard not applicable in Section 2255 proceedings; "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.") Petitioner offers nothing more than she has offered before.  These claims may not be considered yet again, and must too be dismissed.  The habeas writ is not a tool for the redetermination of petitioner's guilt or innocence.

**VI.     Khorozian's Section 2255 Motion Should Be Dismissed**
         <u>**On the Papers, Without a Hearing**</u>

Section 2255 calls for a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255.  Rule 4(b) of the Rules Governing Section 2255 Proceedings provides:

> If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and  cause the movant to be notified.

This is such a case.  The decision to conduct an evidentiary hearing is committed to the sound discretion of the district court.  <u>Government of the Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989).  In exercising that discretion, the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.  <u>Id.</u>  Summary dismissal is appropriate here  because the face of Khorozian's motion, the record of the case, and the frivolousness of her arguments conclusively show that she is not entitled to relief.

## <u>CONCLUSION</u>

For the foregoing reasons, the petitioner's motion to vacate, set aside or correct her

sentence under 28 U.S.C. § 2255 should be denied in all respects.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

<u>/s/ Michele Brown</u>

By: MICHELE BROWN
Assistant U.S. Attorney

Newark, New Jersey
December 17, 2004

22

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2004, I caused a copy of the foregoing to be mailed by United States regular mail to:

Sara Sencer McArdle, Esq.

415 Route 10 East

Randolph, New Jersey 07869

/s/Michele Brown
MICHELE BROWN
Assistant U.S. Attorney

23